**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

ERICH TERRY,

                Plaintiff,

vs.                                        Case No. 3:08-cv-722-J-JRK

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                Defendant.
_____/

## **OPINION AND ORDER**[1]

### **I. Status**

Erich Terry ("Plaintiff") is appealing the Commissioner of the Social Security Administration's final decision denying his claim for disability insurance benefits and supplemental security income. His alleged inability to work is based on injuries to the left knee and abdomen, a hernia, and problems with his back. See Transcript of Administrative Proceedings ("Tr.") at 57; Plaintiff's Memorandum of Law in Opposition to the Commissioner's Denial of Benefits (Doc. No. 19; "Pl.'s Mem.") at 3-4. On January 5, 2005, Plaintiff filed an application for disability insurance benefits, and on January 6, 2005, Plaintiff filed an application for supplemental security income. Tr. at 12.[2] Plaintiff initially alleged an onset date of September 10, 2003, but later amended the onset date to May 18, 2004. Tr. at 54, 58, 12. An Administrative Law Judge ("ALJ") held a hearing on November 29, 2006, Tr. at 302-66, and issued a decision on August 28, 2007, finding Plaintiff not disabled through

---

       [1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge, see Consent to the Exercise of Jurisdiction by a United States Magistrate Judge (Doc. No. 15), and the Order of Reference was entered on August 25, 2008 (Doc. No. 16).

       [2] Plaintiff's initial applications are not included in the Transcript of Administrative Proceedings.

the date of the decision. Tr. at 12-20. On May 22, 2008, the Appeals Council denied Plaintiff's request for review. Tr. at 4-6. On July 17, 2008, Plaintiff commenced this action under 42 U.S.C. § 405(g) by timely filing a Complaint (Doc. No. 1) seeking review of the Commissioner's final decision. Plaintiff has exhausted the available administrative remedies, and the case is properly before the Court.

Plaintiff, who was forty-one years old at the time of his hearing before the ALJ (Tr. at 305), argues the ALJ erred in three ways: 1) by failing to articulate adequate reasons for discounting the opinion of Plaintiff's treating physician regarding the effects of Plaintiff's pain; 2) by failing to evaluate Plaintiff's pain allegations in accordance with the standard set forth by the United States Court of Appeals for the Eleventh Circuit; and 3) by failing to include the effects of Plaintiff's pain in the hypothetical to the vocational expert.[3] Pl.'s Mem. at 8-11. Plaintiff also argues generally that the decision of the Commissioner is not supported by substantial evidence. Id. at 11-12. After a thorough review of the entire record and consideration of the parties' respective memoranda, the undersigned finds the ALJ's decision is due to be reversed and remanded for further proceedings consistent with this opinion.

## **II. The ALJ's Decision**

When determining whether an individual is disabled, an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the plaintiff: 1) is currently employed; 2) has a severe impairment; 3)

---

[3] Initially, Plaintiff's brief lists six issues:

(1) failing to accord significant weight to the opinions [of] his treating physicians; (2) failing to properly evaluate his pain in accordance with the Eleventh Circuit Pain Standard; (3) concluding that his testimony was not entirely credible; (4) erroneously evaluating the Plaintiff's residual functional capacity; (5) misinterpreting the testimony of the vocational expert; and (6) issuing a decision not supported by substantial evidence.

Pl.'s Mem. at 1. It appears Plaintiff later combines some of the issues in the body of his memorandum.

has an impairment that meets or medically equals one listed in the regulations; 4) can perform past relevant work; and 5) retains the ability to perform any work in the national economy. See 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The ALJ performed the required five-step sequential inquiry. At step one, the ALJ established Plaintiff has not engaged in substantial gainful activity since May 18, 2004 (the amended alleged onset date). Tr. at 14. At step two, the ALJ found Plaintiff suffers from the following severe impairments: "History of lumbar degenerative disc disease and history of illonguinal [sic] neuralgia." Tr. at 14. At step three, the ALJ stated Plaintiff does not have an impairment or combination of impairments that meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. at 14.

The ALJ determined Plaintiff has the residual functional capacity ("RFC") to do the following: Plaintiff can "sit and stand for 8 hours in a normal work day but he must be allowed to frequently alternate his position between sitting and standing and walking at least every 15-30 minutes"; Plaintiff cannot squat, twist, climb, or kneel; Plaintiff can lift and/or carry up to ten pounds occasionally and five or less pounds frequently. Tr. at 15. Plaintiff "has no manipulative, communicative, or mental impairments." Tr. at 15. At step four, the ALJ found Plaintiff "is capable of performing his past relevant work as grounds caretaker as he described it during the hearing."[4] Tr. at 18. Alternatively, at step five, the ALJ determined that Plaintiff is capable of performing jobs that exist in significant numbers in the national economy considering his age, education, work experience, and RFC. Tr. at 18. The ALJ identified such jobs as "surveillance system monitor," "order clerk and food/beverage," and

---

[4] Plaintiff's additional past relevant work includes working as a door manufacturer, a floor technician, a fork lift operator, a line cook, a powerdriver, a tie down man, and a warehouse manager. Tr. at 58-59, 65.

-3-

"table worker[.]" Tr. at 19. The ALJ concluded Plaintiff was not under a disability[5] from May 18, 2004 (the amended alleged onset date) through the date of the decision. Tr. at 20.

## III. Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence' . . . ." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (internal quotation and citations omitted); see also McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence–even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

---

[5] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).

-4-

## IV. Discussion

Plaintiff argues the ALJ erred in three ways: 1) failing to give adequate reasons for discounting the opinion of Plaintiff's treating physician regarding the effects of Plaintiff's pain; 2) failing to properly evaluate the effects of Plaintiff's pain in accordance with the Eleventh Circuit pain standard; and 3) failing to include in the hypothetical to the vocational expert the effects of Plaintiff's pain. Each argument is addressed in turn.

### A. Opinion of Plaintiff's Treating Physician

With respect to the opinion of one of Plaintiff's treating physicians, Claudio E. Vincenty, M.D. ("Dr. Vincenty"), Plaintiff argues "the ALJ failed to give adequate reasons for rejecting Dr. Vincenty's opinion that [Plaintiff's] pain was constant, would interfere with his ability to concentrate and would cause unplanned absences from work." Pl.'s Mem. at 8. Dr. Vincenty treated Plaintiff for pain resulting from an injury happening at work "in which he sustained an inguinal hernia." Tr. at 154. The injury causing the hernia occurred sometime in 2002. Tr. at 316.

On June 21, 2002, Plaintiff underwent a "laparoscopic left inguinal hernia repair with mesh," performed by Mark Alan Dobbertien, D.O. Tr. at 124-26.[6] Plaintiff "tolerated the procedure extremely well[.]" Tr. at 126. However, Plaintiff later reported to Dr. Vincenty that he was experiencing pain in his abdomen and lower back. Tr. at 244. Plaintiff was diagnosed with "Ilioinguinal/genitofemoral neuralgia, left side." Tr. at 244. "[S]everal treatment options" were attempted by Dr. Vincenty from October 2003 through March 2004, including "lumbar facet injections on the left, a series of two," "ilioinguinal/genitofemoral nerve blocks," "cryoablation . . . of his ilioinguinal/genitofemoral nerve path," "Neurontin," and

---

[6] One page of the report detailing the procedure is missing from the Transcript. See Tr. at 124-26.

-5-

"Lidoderm patch," all of which failed to provide any permanent relief. Tr. at 244; see also Tr. at 246, 247-48.

On June 28, 2004, Plaintiff decided to undergo a spinal cord stimulator implant and trial. Tr. at 244. A thoracic MRI was ordered "to rule out stenosis before a spinal cord stimulator trial." Tr. at 245. On July 29, 2004, Plaintiff underwent an MRI of the thoracic spine, which was unremarkable.[7] Tr. at 242. On October 4, 2004, after having completed six physical therapy sessions, Plaintiff reported to Dr. Vincenty that he was continuously "experienc[ing] left groin pain that radiate[d] down through his left testicle." Tr. at 237. Plaintiff further reported that the pain was "decreased with Lortab 7.5 mg[.]" Tr. at 237. The diagnosis was "Ilioinguinal and genitofemoral neuralgia," as well as "L4-L5 and L5-S1 degenerative disc disease." Tr. at 237. Plaintiff confirmed his desire to have a spinal cord stimulator installed. Tr. at 237.

On November 30, 2004, Plaintiff underwent a procedure by Dr. Vincenty to insert a "peripheral nerve stimulator, stage 1." Tr. at 164, 235. Plaintiff's pain level before the surgery was described as an eight on a scale of ten. Tr. at 181. On December 3, 2004, after a "successful co[r]d stimulator trial," Plaintiff's pain level was described as a five on a scale of ten. Tr. at 233-34, 160. On that date, Dr. Vincenty inserted and programmed a battery generator. Tr. at 233-34. Upon discharge from the surgery center, Plaintiff's pain level was a two. Tr. at 160.

On December 14 and December 21, 2004, Plaintiff was seen by Keith Rawlinson, P.A.-C. ("Mr. Rawlinson"), Dr. Vincenty's Physician's Assistant, for follow-up visits. Tr. at 232, 231. During the former visit, Plaintiff reported a pain level of four on a scale of ten;

---

[7] William Feske, M.D. interpreted the results of the thoracic MRI. Tr. at 242.

during the latter visit, Plaintiff reported a pain level of six on a scale of ten. Tr. at 232, 231. Sometime before the December 21, 2004 visit, Plaintiff's spinal cord stimulator was reprogrammed because it was not alleviating Plaintiff's pain sufficiently. Tr. at 231.

At a follow-up visit on January 4, 2005, Mr. Rawlinson noted a pain level of six on a scale of ten, but recognized that "patient d[id] have good coverage of his left groin pain with the spinal cord stimulator turned up to the higher levels." Tr. at 211. Plaintiff complained of problems with frequently having "feelings of urgency" with his bladder. Tr. at 211. Plaintiff was referred to a urologist. Tr. at 211. On February 1, 2005, Plaintiff reported to Mr. Rawlinson "a significant amount of ilioinguinal groin pain," rating his pain as a five on a scale of ten. Tr. at 210. Plaintiff's prescription for Lortab was refilled, and he was directed to start Lidoderm patches. Tr. at 210. On April 5, 2005, Plaintiff reported to Mr. Rawlinson a pain level of five on a scale of ten. Tr. at 209. He was directed to continue taking Lortab "7.5/500 mg b.i.d." and to continue using the patches. Tr. at 209.

On November 17, 2006, Dr. Vincenty filled out a "Questionnaire to Physician-Pain" form. Tr. at 52-53. Dr. Vincenty stated Plaintiff suffered from "ilioinguinal nerve entrapment" which caused "severe groin pain[.]" Tr. at 52. Dr. Vincenty rated Plaintiff's pain as a five out of ten "on [a] visual analog scale," opining the duration and frequency were "constant[.]" Tr. at 52. Furthermore, Dr. Vincenty speculated Plaintiff "[m]ay have inability to concentrate due to pain or because of meds." Tr .at 53. Dr. Vincenty noted Plaintiff has been prescribed Lortab seven and one-half milligrams and takes three pills per day. Tr. at 53. Finally, Dr. Vincenty stated, "P[atien]t is impaired due to groin pain[.] Might be able to perform sedentary work. Might require unplanned days off if pain is exacerbated & scheduled breaks." Tr. at 53.

The Social Security Regulations instruct ALJs how to weigh the medical opinions[8] of treating physicians[9] properly. See 20 C.F.R. § 404.1527(d). Because treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)," a treating physician's medical opinion is to be afforded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 404.1527(d)(2). When a treating physician's medical opinion is not due controlling weight, the ALJ must determine the appropriate weight it should be given by considering factors such as the length of treatment, the frequency of examination, the nature and extent of the treatment relationship, as well as the supportability of the opinion, its consistency with the other evidence, and the specialization of the physician. Id.

If an ALJ concludes the medical opinion of a treating physician should be given less than substantial or considerable weight, he or she must clearly articulate reasons showing "good cause" for discounting it. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause exists when (1) the opinion is not bolstered by the evidence, (2) the evidence supports a contrary finding, or (3) the opinion is conclusory or inconsistent with the treating physician's own medical records. Phillips v. Barnhart, 357 F.3d 1232, 1240-41 (11th Cir. 2004); see also Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991); Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987) (stating that a treating physician's medical opinion

---

[8] Medical opinions are statements from physicians that reflect judgments about the nature and severity of the claimant's impairment, including symptoms, diagnosis, prognosis, and what the claimant can still do despite the impairment. 20 C.F.R. § 404.1527(a)(2).

[9] A treating physician is a physician who provides medical treatment or evaluation to the claimant and who has, or has had, an ongoing treatment relationship with the claimant, as established by medical evidence showing that the claimant sees or has seen the physician with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required the for the medical condition. See 20 C.F.R. § 404.1502.

-8-

may be discounted when it is not accompanied by objective medical evidence). The ALJ must "state with particularity the weight he [or she] gave the different medical opinions and the reasons therefor." Sharfarz v. Bowen, 825 F.2d 278, 279-80 (11th Cir. 1987); see also MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986).

When discussing the November 17, 2006 questionnaire, the ALJ stated as follows:

> . . . Dr. Vincenty reported the claimant was diagnosed with illionguinal [sic] nerve entrapment that resulted in pain that was 5/10 on the pain scale. Dr. Vincenty reported the claimant's pain was constant. Dr. Vincenty reported the claimant was prescribed Lortab, 7.5 mg. Dr. Vincenty further reported that the claimant might be able to perform sedentary work and might require unplanned days off if his pain was exacerbated[.]

Tr. at 18 (referring to Tr. at 52-53, 284-85). The ALJ did not state the weight he was affording this opinion, although he later used one portion of the opinion (that Plaintiff "might" be capable of performing sedentary work) to bolster the opinion of another treating physician, Dr. Boggs, about the type of work Plaintiff can perform. Tr. at 18. Without an explanation of the weight afforded to Dr. Vincenty's opinion regarding Plaintiff's pain and the effect it has on Plaintiff's ability to perform work, the undersigned is unable to conduct a meaningful review of the ALJ's evaluation of Dr. Vincenty's opinion. Thus, on remand, the ALJ shall state with particularity the weight he is affording Dr. Vincenty's opinion, including the opinion regarding Plaintiff's pain and its effect on Plaintiff's ability to perform work; if the opinion is discounted, the ALJ shall articulate reasons showing good cause for discounting it. See Lewis, 125 F.3d at 1440.

### B. Effects of Plaintiff's Pain

Plaintiff next contends the ALJ failed to evaluate Plaintiff's pain properly, and in doing so, wrongly discredited Plaintiff's statements regarding the intensity, persistence, and limiting effects of his pain. Pl.'s Mem. at 8-9. "In order to establish a disability based on

testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)). If it is determined that a claimant has a medical condition that could reasonably give rise to the pain alleged, "all evidence about the intensity, persistence, and functionally limiting effects of pain or other symptoms must be considered in addition to the medical signs and laboratory findings in deciding the issue of disability." Foote, 67 F.3d at 1561.

"The claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability." Holt, 921 F.3d at 1223; Foote, 67 F.3d at 1561. Although "credibility determinations are the province of the ALJ," Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005), "explicit and adequate reasons" must be articulated if the ALJ discredits the claimant's testimony. Wilson, 284 F.3d at 1225; see also Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005); Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992) (stating that "after considering a claimant's complaints of pain [or other subjective symptoms], the ALJ may reject them as not creditable, and that determination will be reviewed for substantial evidence"). When considering the claimant's pain testimony, the Regulations provide that the following factors should be considered: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of medication; (5) treatment, other than medication; (6) measures used to alleviate

-10-

pain or other symptoms; and (7) the claimant's functional limitations. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); see also Davis v. Astrue, 287 F. App'x 748, 760 (11th Cir. 2008) (unpublished).

The ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to produce some of the alleged symptoms, but that [Plaintiff]'s statements concerning the intensity, persistence and limiting effects of these symptoms are not credible." Tr. at 17. First, the ALJ discussed Plaintiff's self-described limitations and Plaintiff's daily activities. With respect to Plaintiff's limitations, the ALJ stated:

> The claimant stated he lives with his employed wife and children ages 18, 15 and 13 year-old twins. The claimant stated he spends the day sitting on the couch or lying in bed. The claimant stated he can sit for 20 to 30 minutes with discomfort in his back and abdomen, stand for 15 to 20 minutes and walk a couple of blocks. The claimant stated he can lift and carry 5 to 6 pounds. The claimant stated he does not perform any household chores. He stated he can only watch TV for about 15 to 20 minutes before he has to get up and move around frequently changing his position.

Tr. at 16 (referring to Tr. at 331-33). Further, with respect to Plaintiff's daily activities, the ALJ went on to state that claimant drives "every other day about 4 blocks to visit his in-laws" and "walks two blocks to his brother's house." Tr. at 16 (referring to Tr. at 335-36). The ALJ commented that Plaintiff "is unable to do activities with his children, but was able to attend his son's football games for about an hour." Tr. at 16 (referring to Tr. at 336-37). The ALJ recognized Plaintiff is able to read the newspaper and the Bible. Tr. at 16 (referring to Tr. at 338). Finally, the ALJ stated Plaintiff is able to attend church three times per month and sometimes leaves after an hour if he is in pain. Tr. at 16 (referring to Tr. at 338, 341). While the ALJ summarized Plaintiff's daily activities, he did not state how, if at all, Plaintiff's self-

described limitations are incredible, and/or how Plaintiff's participation in such activities constitutes a basis for discounting Plaintiff's testimony about the persistence of his pain.[10]

Second, the ALJ commented on the alleged side effect of drowsiness from Plaintiff's medication, specifically referring to Plaintiff's assertion that it "make[s] him sleep all the time."[11] Tr. at 16 (referring to Tr. at 334). The ALJ rejected this contention, explaining:

> [S]uch testimony is not supported by the evidence in the hearing record. The claimant has taken virtually the same pain medications for a substantial period of time. If he were having the adverse medication side effects that he claimed, it is reasonable to conclude he would have mentioned this fact to his treating physician and that his medication or dosage would have been adjusted to reduce the adverse side effects.

Tr. at 20. The ALJ's reason in this regard is supported by substantial evidence in the record, as the undersigned has not located any instance when Plaintiff complained of drowsiness or the like to his treating physicians. In fact, when filling out forms regarding the pain Plaintiff experiences, Plaintiff and his wife both commented that there were no side effects from his medication. Tr. at 80, 82; see also Tr. at 94; but see Tr. at 87 (reporting "some drowsiness" from medication on "Disability Report-Appeal" form).

Third, the ALJ commented on Plaintiff's alleged "urinary frequency" and pointed out he has not received any medical treatment for that particular problem. Tr. at 16 (referring to Tr. at 340). However, Plaintiff testified that he does not currently have health insurance and is unable to pay for medical treatment for the issue. Tr. at 339-40. Additionally, the undersigned notes that Plaintiff reported the frequency problem when seeing Mr. Rawlinson, and Mr. Rawlinson believed the problem was serious enough to warrant referral to a

---

[10] Further, the undersigned notes that Plaintiff had to get up and walk around twice during his less than two-hour hearing before the ALJ (Tr. at 342-43), but the ALJ did not comment on these occurrences in his decision.

[11] Plaintiff actually testified that he sleeps during the day for thirty to forty-five minute intervals because of the medication he is taking. Tr. at 344.

-12-

urologist for evaluation.[12]  Tr. at 211.  Without having considered Plaintiff's explanation regarding his inability to receive treatment, the ALJ could not draw the inference that by not receiving treatment, the problem was not as severe as Plaintiff contends.  See SSR 96-7p, 1996 WL 374186, at *7 (S.S.A. 1996) (stating "the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide. . .").  Accordingly, on remand, the ALJ shall consider the explanation provided by Plaintiff regarding his failure to seek medical treatment.

Fourth, the ALJ mentioned generally that Plaintiff "stated the pain in his abdomen and back is constant and he has to constantly move around for relief."  Tr. at 16 (referring to Tr. at 332).  The ALJ did not articulate whether this testimony was accepted or rejected as incredible; if the ALJ did reject this testimony, he did not articulate reasons for doing so.

The ALJ did not address the remaining factors identified as relevant in the Regulations.  Upon review of the ALJ's reasons for discounting Plaintiff's alleged symptoms, remand for further explanation is required.  On remand, the ALJ shall take into consideration all factors identified in 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3), and shall provide explicit and adequate reasons for discounting Plaintiff's statements regarding the intensity, persistence, and limiting effects of his pain and other symptoms, if the ALJ decides to discount them.

### C. Hypothetical to the Vocational Expert

Finally, Plaintiff argues the ALJ failed to incorporate the limiting effects of his pain in the hypothetical to the vocational expert.  Pl.'s Mem. at 9-11.  In the fifth step of the

---

[12] Plaintiff did not follow-up with the referral to a urologist because of his inability to pay for medical treatment and lack of health insurance.  Tr. at 339-40.

-13-

sequential evaluation process, an ALJ may pose a hypothetical question to a vocational expert as part of his determination of whether the claimant can obtain work in the national economy. See 20 C.F.R. § 416.920(a)-(f). "In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." Wilson v. Barnhart, 284 F.3d 1219, 1227(11th Cir. 2002) (citing Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999)); see also Loveless v. Massanari, 136 F. Supp. 2d 1245, 1250 (M.D. Ala. 2001). Because of the other errors identified with respect to Plaintiff's alleged pain and its effects, on remand, the ALJ shall determine whether the results of a further analysis of Plaintiff's treating physician's opinion and Plaintiff's subjective complaints of pain warrant incorporation of Plaintiff's pain effects in the hypothetical to the vocational expert, and if so, to what extent.[13]

## V. Conclusion

Given the ALJ's failure to articulate the weight afforded to Dr. Vincenty's opinion regarding the limiting effects of Plaintiff's pain, combined with the ALJ's failure to articulate reasons for discounting Plaintiff's allegation of pain and other symptoms resulting from his impairments, remand is required. In accordance with the foregoing, it is

**ORDERED:**

1. The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g), as incorporated by § 1383(c)(3), **REVERSING** the Commissioner's decision and **REMANDING** this matter with the following instructions:

---

[13] The undersigned recognizes the ALJ's second hypothetical to the vocational expert included "alternat[ing] the[] positions say every 15 to 30 minutes between sitting and standing and walking[.]" Tr. at 354, 19. Presumably, this limitation was included based on some level of deference to Plaintiff's pain allegations. However, in light of the other findings made herein with respect to the ALJ's evaluation of Plaintiff's subjective pain complaints and the possible effects of the complaints, it may be appropriate to reformulate the hypothetical on remand.

-14-

(a) Reevaluate the opinion of treating physician Dr. Vincenty and state with particularity the weight afforded to Dr. Vincenty's opinion, including the opinion regarding Plaintiff's pain and its effect on Plaintiff's ability to perform work; if the opinion is discounted, reasons showing good cause for discounting it shall be provided;

(b) Reevaluate Plaintiff's subjective complaints of pain and other symptoms in light of all of the evidence of record and explicitly consider all of the factors set forth in 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3);

(c) Reevaluate the hypothetical question posed to the vocational expert in light of the findings made with respect to Plaintiff's treating physician's opinion and Plaintiff's pain and its limiting effects; and

(d) Take such other action as may be necessary to resolve this claim properly.

2. The Clerk of Court is directed to close the file.

3. If benefits are awarded on remand, Plaintiff's counsel shall have thirty (30) days from receiving notice of the amount of past due benefits to seek the Court's approval of attorney's fees pursuant to 42 U.S.C. § 406(b). See Bergen v. Comm'r Soc. Sec., 454 F.3d 1273 (11th Cir. 2006).

**DONE AND ORDERED** at Jacksonville, Florida on September 30, 2009.

*James R. Klindt*
JAMES R. KLINDT
United States Magistrate Judge

kaw
Copies to:
Counsel of Record